UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MASSACHUSETTS BAY INSURANCE COMPANY, a Massachusetts corporation, and HANOVER INSURANCE COMPANY, a New Hampshire corporation,<br><br>Plaintiffs,<br><br>v.<br><br>G.M. NORTHRUP CORPORATION, a Minnesota corporation,<br><br>Defendant. | Case No.: |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES, Plaintiffs, Massachusetts Bay Insurance Company ("Mass Bay") and Hanover Insurance Company ("Hanover"), by and through their attorneys, and for their Complaint for Declaratory Judgment against Defendant G.M. Northrup Corporation ("Northrup"), states as follows:

**I.  PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Mass Bay is a Massachusetts corporation with its principal place of business in Worcester, Massachusetts.

2. Plaintiff Hanover is a New Hampshire corporation with its principal place of business in Worcester, Massachusetts.

3. Defendant Northrup is a Minnesota corporation, with its principal place of business in Prior Lake, Minnesota.

4. Northrup is a defendant in a lawsuit filed in the Superior Court of the State of Washington in and for Pierce County, Case No. 20-2-07117-5, under the caption, *Christian Beck, Danna Holland, and Scott Holland v. Rhine Demolition, LLC, et al.* (the "Beck Lawsuit"), which gives rise to this action and in which the plaintiffs seek damages significantly exceeding $75,000 against NWCREI.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201 based on diversity of citizenship between the Plaintiff and Defendants, as well as the fact that the amount in controversy exceeds $75,000.

6. Venue is proper in this matter because certain events giving rise to this matter occurred in this judicial district and the Defendants are subject to the personal jurisdiction of this Court. 28 U.S.C.A. §1391.

## II.     FACTUAL BACKGROUND

<u>Beck Lawsuit</u>

7. On or about October 15, 2020, the original Complaint was filed in the Beck Lawsuit.

8. Northrup was named as a defendant in the original Complaint in the Beck Lawsuit, but was dismissed without prejudice.

9. On January 21, 2022, a Second Amended Complaint was filed in the Beck Lawsuit. A true and correct copy of the Second Amended Complaint is attached hereto and incorporated herein as **Exhibit A**.

10. The Second Amended Complaint alleges that Northrup "served as the general contractor for the construction of the O'Reilly Auto Parts building located at 23030 NE State Route 3, Belfair, WA 98528." <u>Ex. A</u>, ¶ 3.

11. The Second Amended Complaint alleges that Northrup "failed to ensure that a fourth sanitary sewer line that extended onto the adjacent North Bay Mortgage property was properly designed, installed, identified, addressed, and/or documented, among other failure" and that the "subject sewer line and/or its connecting lines were negligently damaged in 2019." Ex. A, ¶ 9.

12. The Second Amended Complaint alleges that on or about May 28, 2019, Christian Beck "went into the store restroom" of the O'Reilly Auto Parts building and that while he was in there, "the highly pressurized condition within the sewage pipeline – which was directly and proximately created by the Defendants' negligent damage to and failure to repair the connecting and adjacent sewage line on the North Bay Mortgage lot – resulted in a catastrophic reverse flow event that projected large volumes [of] raw sewage out of the store toilet." Ex. A, ¶ 20.

13. The Second Amended Complaint alleges that Christian Beck was "drenched in dangerous raw sewage." Ex. A, ¶ 20.

14. The Second Amended Complaint alleges that Christian Beck's "exposure to the raw sewage resulted in severe staph bacterial infection, toxic shock syndrome, sepsis, massive organ failure, sudden cardiac death, and – following the recommencement of a heart rate approximately 30 minutes later – significant neurologic damage, including but not limited to blindness and hypoxic brain injury." Ex. A, ¶ 21.

15. The Second Amended Complaint alleges that Northrup breached its duty of reasonable and ordinary care, as well as its "duty to comply with and adhere to Washington law, code, regulations, and statutory requirements, guidelines, provisions, and standards with respect to the initial design, installation, construction, identification, and documentation of the subject sewer line and its connections in 2013 – as well as the preparation for, effectuation of, and remedial

measures relating to the demolition of the North Bay Mortgage site, including but not limited to sewage pipelines located on or adjacent to this site, in 2019." Ex. A, ¶¶ 50, 51.

16. The Second Amended Complaint alleges that Northrup breached its duties "when it failed to: properly supervise and monitor the original construction of the O'Reilly Auto Parts building, including but not limited to reviewing, approving, identifying, and properly documenting sewage, septic, and utilities-related construction and installation, as well as ensuring not only that the actions on the worksite were safe, but also, that subcontractors were complying with the industry standards of care and reasonable and necessary safety protocols for conducting, completing, and documenting their respective contracted work so as not to create potentially dangerous and/or hazardous conditions." Ex. A, ¶ 53.

Insurance Policies

17. Mass Bay issued Commercial Line Policy No. ZDX D790397 00 (the "CGL Policy") to Northrup for the policy period from December 31, 2018 to December 31, 2019. A true and correct certified copy of the CGL Policy is attached hereto and incorporated herein as **Exhibit B**.

18. The CGL Policy (Ex. B) contains an insuring agreement for "bodily injury" including the following provisions:

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> > a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion,

investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period….

19. The CGL Policy contains a "Fungi or Bacteria Exclusion" endorsement, which provides, in part, the following:

**1. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

20. The CGL Policy (Ex. B) contains two pollution exclusion endorsements – "Total Pollution Exclusion With A Hostile Fire Exception" and "Total Pollution Exclusion With A

Building Heating, Cooling And Dehumidifying Equipment And A Hostile Fire Exception" – which both provide, in part:

> **f. Pollution**
>
> **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time….

21. The CGL Policy defines "Pollutants" as follows:

> **15.** "Pollutants' mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

22. Hanover issued Commercial Follow Form Excess and Umbrella Policy No. UHX D790398 00 (the "Excess Policy") to Northrup for the policy period from December 31, 2018 to December 31, 2019. A true and correct certified copy of the Excess Policy is attached hereto as **Exhibit C**.

23. The Excess Policy (Ex. C) contains insuring agreement that include the following provisions:

> **I. INSURING AGREEMENTS**
>
> **1. Coverage A – Follow Form Excess Liability Insuring Agreement**
>
> **a.** We will pay on behalf of the insured those sums in excess of the "underlying insurance" which the insured becomes legally obligated top ay as damages, provided:
>
> **(1)** Such damages are covered by "underlying insurance";
>
> **(2)** The event which triggers coverage on the "underlying insurance" takes place, during the policy period of this insurance, and
>
> **(3)** The applicable Limit of Insurance of the "underlying insurance" is exhausted by payment of judgments, settlements, related costs

  or expenses for damages also covered under this policy. We will not pay if the Limit of Insurance of "underlying insurance" is exhausted by payment for damages to which this insurance does not also apply.

 **b.** We will not pay damages that the "underlying insurance' does not pay for any reason other than exhaustion of limits of the "underlying insurance" by payment of judgments, settlements, related costs or expenses.

 **c.** The terms and conditions of the "underlying insurance" in effect at the inception of this policy apply unless they are inconsistent with the terms and conditions of this policy.

 **d.** The amount we will pay for damages is limited as described in section **VI. LIMITS OF INSURANCE**

 **e.** We have no obligation under this insurance with respect to any claim or "suit" settled without our consent.

 **f.** This policy does not apply to any part of loss within the Limit of Insurance of "underlying insurance", or any related costs or expenses.

 **g.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under section **II. DEFENSE AND SETTLEMENT** and section **V. SUPPLEMENTAL PAYMENTS**.

**2. Coverage B – Umbrella Liability Insuring Agreement**

 **a.** We will pay on behalf of the insured those sums in excess of the "retained limit" shown in the Declarations which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" and "advertising injury" to which this coverage applies, provided:

  **(1)** The:

   **(a)** "Bodily injury" or "property damage" is caused by an "occurrence"; or

   **(b)** "Personal injury" and "advertising injury" is caused by an offense arising out of your business;

> Which took place within the coverage territory as described in section **IV. COVERAGE TERRITORY**;
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period, and the offense causing "personal injury" or "advertising injury" is first committed during our policy period….

24. The Excess Policy (Ex. C) contains an endorsement entitled, "Exclusion – Total Pollution (Coverage A)", which provides in relevant part:

> Section **VII. EXCLUSIONS**, paragraph **2.** Applicable to **Coverage A – Follow Form Excess Liability** only, subparagraph **a.** is replaced by the following:
>
> **a. Pollution**
>
> **(1)** "Bodily injury", "property damage", "personal injury" or "advertising injury" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time….

25. The Excess Policy (Ex. C) also contains a "Pollution" exclusion applicable to **Coverage B – Umbrella Liability**, which provides, in relevant part:

> **j. Pollution**
>
> **(1)** "Bodily injury", "property damage", "personal injury" or "advertising injury" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time….

26. The Excess Policy (Ex. C) contains the following definition of "Pollutants":

> **16. "Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

27. The Excess Policy (Ex. C) contains an endorsement entitled, "Exclusion – Fungi or Bacteria Liability (Coverage A and B)", which provides, in relevant part:

The following is added to section **VII. EXCLUSIONS,** paragraph **1.** Applicable to Both **Coverage A – Follow Form Excess Liability** and **Coverage B – Umbrella Liability**:

This insurance does not apply to:

**Fungi or Bacteria**

Any liability or expense arising out of "fungi" or bacteria which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage….

## COUNT I
### Declaratory Judgment
### (No Duty to Defend – CGL Policy – Fungi or Bacteria Exclusion)

28. Mass Bay and Hanover adopt and incorporate by reference paragraphs 1-27, as though fully set forth herein as this paragraph 28.

29. The "Fungi or Bacteria Exclusion" endorsement in the CGL Policy excludes bodily injury which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

30. The Second Amended Complaint alleges that injuries to Christian Beck which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, bacteria in the restroom of the O'Reilly Auto Parts building.

31. The "Fungi or Bacteria" exclusion excludes coverage for the Beck Lawsuit.

32. Mass Bay has no duty to defend or indemnify Northrup in the Beck Lawsuit under the CGL Policy.

WHEREFORE, Mass Bay and Hanover pray that this Honorable Court find and declare that Mass Bay has no duty to defend or indemnify Northrup in the Beck Lawsuit under the CGL Policy and grant Plaintiffs any other relief that this Court deems just and proper, including fees and costs.

## COUNT II
**Declaratory Judgment**
**(No Duty to Defend – CGL Policy – Pollution Exclusion)**

33. Mass Bay and Hanover adopt and incorporate by reference paragraphs 1-27, as though fully set forth herein as this paragraph 33.

34. The pollution exclusions in the CGL Policy exclude "bodily injury" which would not have occurred in whole or in part but for the actual or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

35. The Second Amended Complaint in the Beck Lawsuit alleges that Christian Beck was exposed to raw sewage as a result of a highly pressurized reverse sewage flow incident in the O'Reilly Auto Parts restroom.

36. Raw sewage is a "pollutant," as defined by the CGL Policy.

37. The Second Amended Complaint alleges "bodily injury" suffered by Christian Beck which would not have occurred in whole or in part but for the discharge, dispersal, seepage, migration, release or escape of "pollutants".

38. The pollution exclusions exclude coverage for the Beck Lawsuit.

39. Mass Bay has no duty to defend or indemnify Northrup in the Beck Lawsuit under the CGL Policy.

WHEREFORE, Mass Bay and Hanover pray that this Honorable Court find and declare that Mass Bay has no duty to defend or indemnify Northrup in the Beck Lawsuit under the CGL Policy and grant Plaintiffs any other relief that this Court deems just and proper, including fees and costs.

**COUNT III**
**Declaratory Judgment**
**(No Duty to Defend – Excess Policy – Fungi or Bacteria Exclusion)**

40. Mass Bay and Hanover adopt and incorporate by reference paragraphs 1-27, as though fully set forth herein as this paragraph 40.

41. The "Fungi or Bacteria Exclusion" endorsement in the Excess Policy excludes bodily injury which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

42. The Second Amended Complaint alleges that injuries to Christian Beck which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, bacteria in the restroom of the O'Reilly Auto Parts building.

43. The "Fungi or Bacteria" exclusion excludes coverage for the Beck Lawsuit.

44. Hanover has no duty to defend or indemnify Northrup in the Beck Lawsuit under the Excess Policy.

WHEREFORE, Mass Bay and Hanover pray that this Honorable Court find and declare that Hanover has no duty to defend or indemnify Northrup in the Beck Lawsuit under the Excess

Policy and grant Plaintiffs any other relief that this Court deems just and proper, including fees and costs.

**COUNT IV**
**Declaratory Judgment**
**(No Duty to Defend – Excess Policy – Pollution Exclusion)**

45. Mass Bay and Hanover adopt and incorporate by reference paragraphs 1-27, as though fully set forth herein as this paragraph 45.

46. The pollution exclusion in the Excess Policy excludes "bodily injury" which would not have occurred in whole or in part but for the actual or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

35. The Second Amended Complaint in the Beck Lawsuit alleges that Christian Beck was exposed to raw sewage as a result of a highly pressurized reverse sewage flow incident in the O'Reilly Auto Parts restroom.

36. Raw sewage is a "pollutant," as defined by the Excess Policy.

37. The Second Amended Complaint alleges "bodily injury" suffered by Christian Beck which would not have occurred in whole or in part but for the discharge, dispersal, seepage, migration, release or escape of "pollutants".

38. The pollution exclusion excludes coverage for the Beck Lawsuit.

39. Hanover has no duty to defend or indemnify Northrup in the Beck Lawsuit under the Excess Policy.

WHEREFORE, Mass Bay and Hanover pray that this Honorable Court find and declare that Hanover has no duty to defend or indemnify Northrup in the Beck Lawsuit under the Excess Policy and grant Plaintiffs any other relief that this Court deems just and proper, including fees and costs.

Dated: March 16, 2022

By: *s/ Ryan C. Gill*
Ryan C. Gill, Bar No. 0401550
Matthew Beyer, Bar No. 0402438
Lewis Brisbois Bisgaard & Smith LLP
90 South 7th Street, Suite 2800
Minneapolis, Minnesota 55402
Telephone: 612.428.5000
Facsimile: 612.428.5001
Email: Ryan.Gill@lewisbrisbois.com
Matthew.Beyer@lewisbrisbois.com

*Attorneys for Plaintiffs Massachusetts Bay Insurance Company and Hanover Insurance Company*